Please report. Good afternoon, your honors. My name is Ethan Ballot and today I speak for Daniel Flint. I'll watch my own clock. I'm going to do my best to save three minutes for rebuttal. I'm going to begin, if I may, with the Rule 29 that we choose before addressing the venue. And I might be ambitious enough to see if we can talk about a constructive amendment. And we'll submit the rest of the argument on the papers, barring questions from your honor. I'll begin with Rule 29. The statute of violation of 49 U.S.C. section 46.314 has four elements. One, the defendant must enter an airport secured area. Two, in violation of security requirements prescribed under two specific enabling statutes, 44901 and or 44903HC. Counsel, did anyone, counsel, did anyone request a jury instruction on attempts? No, your honor. He wasn't charged with attempt. And the attempt instruction, the attempted circumvention comes in with the constructive amendment argument. But he wasn't charged with attempt. And that came in through the regulation ending dot 105, 1540.105 that was disclosed at the eve of, at the beginning of trial, not in the indictment. And so, the third element was he has to enter the secured area knowingly and willfully. The entrance is knowingly willful. He has no violation of law to act to do so. And fourth, when he enters, he has to have the intent to obey the security procedures. And because law enforcement, when the plane came to LAX, boarded the plane, identified themselves as law enforcement, asked Mr. Flint to come with them, and he submitted to their authority while still on the plane, we contend that no rational juror would find him guilty on either the second, third, or fourth elements. And I'll begin with the third element, which is willfully. Willfully requires an intent to violate the law. And as shown, and this is ER 301 and 321, ER 364. When he entered LAX, he was complying with law enforcement. The exact opposite of the intent to violate the law. And because that entrance was done in conformity with law enforcement, they told him they had to come with him, he submitted. He could not have had willful intent as a matter of law. And the government, we've identified the immigration cases, which are a good analog. The court need not go as far as cases like Pacheco, which say, if you're under surveillance, you're not willful. Because we're not arguing that he was under surveillance. He was in custody at the time he left. So as a matter of law, that cannot be willful misconduct. As a side note on this argument. What is your basis for importing immigration law into this language? Why wouldn't we just look at the plain, ordinary meaning of the word enter? Oh, it's willfully enter. And so you have to enter with the intent to violate the law. And then you have to, it says willfully enter and it specifies what you're violating. You're violating the security requirements. Right. But willfully under Brian versus the United States, as the judge, Judge Otero properly instructed the jury, willfully, and this is Brian, the United States, it's Rasclatt. The person has to have the intent to violate the law at the time. That's what willful means. Well, intent to enter, right? In violation of security requirements. When he's entering, his intent must be, I am doing so in violation of security requirements. And when you're in custody, as a third element, you can't be do willful because you've submitted to lawful authority. And we addressed the check when the immigration statutes, because they're a good analog of how this court has interpreted enter. But I would agree you don't have to go that far. The question is, are you willfully trying to evade the law when you've submitted to custody? Didn't he intend that he was going to deplane at LAX? He wasn't charged. That's an argument that focuses on intent. Now, an attempt, and this ultimately shows why they should have charged him in midway, which is the venue issue. It doesn't matter what he intended to do before he deplaned. What matters is when he entered. But once he's on the plane in midway and it takes off, isn't the natural and probable consequence of that action that he's going to deplane at LAX? Well, first he was going to deplane at Minnesota, which he did. And then he got back on the plane in Minnesota. But the question is, did he willfully enter LAX when he was in custody? And we're saying that's just not proven. And he has to enter with that intent. The second, and part of what your Honor's questions go to is the second reason why they failed to prove their case. And this is, he has to enter with the intent to evade. And we know from Nichols, which is a Supreme Court case, 136 Supreme Court 1113, that when it's in the present tense, the court has to apply the statute in that text. And at best, what your Honor suggests is when he entered LA, he would do so knowing that he had in the past evaded security requirements. Let me ask you, let me ask you sort of hypothetically, if the police hadn't gone on the plane and escorted him off, but it simply waited until he got off the plane, would there be a problem with that? Yes, because even then, that's the argument I'm making now, he would do so with knowledge that he had evaded security requirements midway. Not that he was evading security requirements at LAX because there were no security requirements at LAX. 44901 and 903 direct each airport to make their own regulations to control their own security areas. And it's almost absurd. What was the present tense case? Nichols versus the United States. Thanks. That's a historic case where they said the registrant had to know where he resides, where he resides in a jurisdiction, and he left to go abroad and the foreign jurisdiction was not part of the, he didn't have to register in a foreign jurisdiction. So he has to reside in a jurisdiction that causes registration. Residing in Thailand didn't require registration and that gap in law was subsequently changed. And so when he gets off the plane at LAX, accepting Judge Wardlaw's hypothetical, he didn't intend to violate security regulations at LAX. LAX had none. He knew he had in the past. And again, that highlights the venue problem we're going to get to. That's why you charge this case at Midway. Excuse me, LAX does not have security requirements? No, they do for boarding planes at ingress. They're known for... The security area at the airport includes where you get off the airplane too, right? But the procedures at LAX that he would have the intent to invade would require de-planning procedures. To have the intent to evade at LAX, there has to be regulation at LAX. He's intending to evade. There's no evidence of that because it doesn't apply to the planning procedures. The whole point... Counsel, is your argument implication that if he was in his bag when he de-planned at LAX carrying a bomb with a detonator set to go off in LAX and explosives, that he would not be violating security regulations at LAX? Absolutely. When he got on that plane at Midway, the crime was completed and he should have been charged in Midway. But when he gets off at LAX, he cannot have the intent to evade a procedure that doesn't exist. And you're saying that he can't be evading LAX's security procedures? Yes. Because LAX doesn't give them for de-planning passengers. They only do them for passengers coming from the public in the Central District. And this is why it's so important that the government charges cases happening in and only in the Central District of California. They could have charged Midway. They should have. That's what defense counsel argued. Right, right. Okay. But we're dealing with the charge here. I'm just trying to explore the implications of your theory. You're saying even if he was carrying a time bomb, that was set and ready to go off, that that would not violate security procedures at the LAX airport? Correct. When he got off the plane at LAX, there was no procedures to submit to. He did submit to the ad hoc procedures they've given. So they cannot prove intent as a matter of law, which shows why they should have charged the Midway. In the case I'll point you to. Are you saying then that, in Judge Gould's hypothetical, that if the terrorist had the bomb and it was set to go off, he set it up so that he'd get on at Midway, no problems, no explosions. He'd get off at LAX, blow it up in the departure area before he passes through the door where you get out of the secured area. And I think you're saying that he couldn't be charged in either place, Midway or LAX. Oh, no. Only Midway. And I'm thinking, so it doesn't matter whether the cops have caught him before he gets off the plane? I thought your whole argument was the cops caught him before he got off the plane. So he really did not willfully get off at LAX. He had no choice in the matter. That's one argument. The argument that you're making, the second argument about whether he did so with the intent to evade. One thing you said your hypothetical client felt was they couldn't charge him with this. Absolutely not true. If someone did what you suggested, he could be charged. And I'm sure there's other things he could be charged with. But in this case... It's what Judge Gould suggested. But I had the same concern. If we go your way, how far can we go before the terrorist is free to blow up his bomb at the destination airport instead of the boarding airport? He never is. They just shouldn't charge him in Midway where the crime occurred. Yeah, why not charge him at LAX where the crime is intended to be completed? Because the crime in your hypothetical, if you get off the plane where there's no security procedures to submit to, you can't have the intent to evade what doesn't exist. No, that makes no sense at all to me. I mean, you go through the security procedure and TSA may be running people through for 5, 10, 20 different gates. And you don't have to go through it again when you get to gate L17 or whatever it is, because you've already gone through it. And you also don't have to go through the security procedure again when you get off the plane. No, because it's considered to be a sterile area once you've gone through TSA once. Right. And then when you get on the plane and you leave the sterile area, you've left that sterile area. That's 44903. And I can give you a site to a case. So your argument really is that it doesn't really matter even if the cops had caught him, even if they'd arrested him on the airplane and then just dragged him off the plane physically into the secured area, the sterile area at LAX, he'd still be guilty. No, he'd be guilty of the crime, whether the crime is for having a bomb, but he wouldn't be guilty of entering with the intent to do something when it's in the present tense when there's no security. There isn't any crime of having a bomb. Construction sites have bombs. Railroads have bombs. Bombs are used to blow away avalanches for highways in Alaska. There are regulations which say you can't have an explosive in the sterile area. So he had an explosive irrespective of security procedures. If he had an explosive device with him, he'd be guilty of that regulation and he'd be charged with that regulation. Counsel, I have another sort of hypothetical. Suppose the police had not gone on the plane and escorted him off. Suppose the police weren't even there. He still has no choice but to get off the plane. I agree he would have gone off the plane. I'm complaining about how and where this case was charged. And the case should have been charged in Midway because of their conduct to let the collar. That's the complaint. And the third issue, and so that relates to venue, the locust electi, the crime was completed in Midway. So it's not committed in two districts under 3237 because the crime's completed. And it's not a continuing offense because the crime's completed. The crime's completed in Midway. 3237 doesn't apply. So that's where the crime occurred in the locust electi rule. And they should have charged him in Midway. All of these problems, your honors are identifying, are based on a poor prosecution decision to try to jam this case in a square hole. The two things I'll add before I try to reserve is, please take a look at a case called Poonian. It's from this court in 61, 294 F. Second, 74. There must be joint union of intent and action. And here the willful entry, if there was one, happened at Midway. And there were procedures at Midway with the intent to evade. None of the except for the rest. And that's what they charged him with. On this point, take a look at the government's brief of 21 to 23. They list all of the mental, the mens rea that he had and what the evidence is. All of it is at Midway. I'll reserve it by May, the last minute of my time. All right. Thank you, counsel. Mr. Fowler. Yes. Good afternoon, your honors. May it please the court. Charles Fowler for the United States. And given the court's focus during the defense argument, I'll dive right into the way these regulations work and why the defendant in this case, when he entered LAX, having landed in the plane, he did so in violation of the security regulations. And help me on help me on this willfully thing. And it strikes me that although we clearly intended to get off the plane at LAX and the natural course of events after he got on the plane at Midway would be that he get off the plane at LAX with the uninspected backpack. Nevertheless, the cops caught him before he got off the plane and being escorted off the means it's not up to you whether you get off the plane and go where the cops are taking you or not. And I don't understand why he wasn't charged with an attempt to commit the crime at LAX. How can he willfully enter the sterile area at LAX if it's not up to him? Well, your honor, I think the answer really is twofold. One, I think the district court correctly concluded that the evidence in the record was not so clear as to whether his own volition was overcome by a law enforcement officer meeting him on the plane. I thought they escorted him. It's kind of like when the police take you anyplace else. It's really not up to you. It's up to them where you go. So charging you with going where they take you can't be your willful and intentional trip to where they take you. Well, I think, your honor, the evidence in the record, the FBI agent's testimony who actually watched the defendant come off the plane was that he was walking of his own accord. But I think it's important on both. When you're in an aluminum tube like that, unless you're violently resisting, they really don't need to grab you. You can't go anywhere else. You're kind of stuck in the aluminum tube between this whole swarm of agents. As I recall, it was kind of a swarm, a whole bunch of police of different types. Well, in a sense, your honor, in that respect, he was hardly positioned any differently than any other passenger who volitionally got on the plane. Sure. That's why usually the police wait for miscreants in the secured area for after they get out the door, because they know they can't go anywhere. But this one, they actually went inside the plane to get them. So the evidence in the record is not that a swarm of law enforcement went onto the plane. It was the air marshal and one other officer. There were several other law enforcement folks waiting in the terminal. And then the testimony is that he was escorted to an interrogation room, a TSC screening room. But at that point, I think it's critical that he was continuing the ruse. I don't think the record supports that he was caught at that time and said, OK, you've got me. I've got an unscreened bag that I'm not supposed to have. Wait, the record doesn't support the notion that he was caught, even though two cops came on the plane and got him and a bunch more were right at the exit to assist if necessary? I think I don't understand. Well, I don't think the record shows that he submitted to having having been caught on any kind of a violation. He was vehemently denying a violation in the interview that occurred after this, which he voluntarily cooperated in, waved Miranda. And so I think his actions in trying to continue to persuade the officers there that this was all on the up and up, that his bag was OK, even though it clearly wasn't, and the jury found as much. And this is after officers had walked into a screening room. I think that shows that through this whole process, he volitionally got off the plane, albeit with an officer walking next to him. He intended. If it turns out that we find ourselves unable to conclude that he got off the airplane and walked into the secured area of his own free will, does that mean that we have to reverse? I don't think so, Your Honor, because I think the court could adopt the district court's rationale at which the operative point of entry was actually when the plane touched down in the airfield. The district court, not only did the court infer an entry in LAX as a as a natural and probable consequence of getting on the plane in Midway, but in fact pinpointed the entry where the plane landed. And I think the record supports that sort of alternative basis for two reasons. One, the testimony by the LAX security director, Mike Diretto, he actually had a map from the LAX, their very own security procedures, and at trial pinpointed the sterile areas of LAX. So let's make sure I understand this. You're saying he entered a sterile area when the plane landed on the tarmac, and it doesn't matter whether he entered a sterile area willfully when he got off the plane and walked into the part of the terminal that's sterile. Is that right? That's that's exactly what the district court found. I think that's an alternative theory. I'll just comment briefly on the defense. What the defense has said about that in their briefing, which is that the regulations exclude the tarmac, the airfield from the definition of sterile areas. And that's not that's just not right. I'm having trouble with this argument. You're saying if I'm on the airplane flying to Pasadena for arguments, we're going to land at Burbank. And as we're going to land in Burbank, this is against my intention. Then I'm not intent. Then I'm. What am I doing? I wouldn't think my intention would matter at all. I don't understand the argument about why landing on the tarmac at LAX matters or can be anything or is intentionally willful. On that theory, your honor, I think, you know, the court would basically be going along the inferential path of the natural and probable consequences of what you've undeniably done. Now, if, in fact, in midair, you think you you decided I in no way want this aircraft to land on the sterile sterile airfield, I think the court could still you might be indulging something of illegal fiction to find as a as a factual matter that there was intent when the wheels touched down. But I think that's a permissible one. But again, this is all this is all on sort of the alternative theory that the district court adopted. Regardless, it's the government's position that nothing the law enforcement did when the plane actually landed, it defeated a willful entry into the whole. It's perfectly clear that when he got on the plane in Midway, he intended to land at LAX to get off the plane at LAX and to walk through the sterile area at LAX till he got to that doorway where you leave the sterile air. It's perfectly clear that that was it's also perfectly clear that law enforcement ordered the plane before he got off and escorted him off. And I think it's a pretty important question whether at that point he willfully intended to enter the sterile area and entered of his own free will at that point or whether it doesn't matter because he formed that intention in Midway or whether he didn't enter the sterile area of his own free will because he was under law enforcement control. And I'm still not really understanding the argument for why he should be treated as entering of his own free will. Because I think the testimony supports that the law enforcement escort did not overcome his own free will in any meaningful sense, any more than anyone else on the plane who likewise had to get off the plane. And again, I think it's critically important that, particularly as to his intent, that the interview that occurred post landing was a was nothing more than a continuation of the ruse that began earlier. He still intended to get his intent was very much to persuade the officers who contacted him that he had done nothing wrong and he very much still intended to complete his journey having moved this bag full of unscreened money from Midway all the way to his final destination wherever he was heading when he left LAX. And so just looping back to how the regulations themselves get you there and support this charge, I think it's very important because the main thrust of the defense argument has been there's simply no regulations that still apply to you once you get to LAX. And that can't be right. And I think it's important to look at the operative language of the regulations. Your argument on that is clear to me. I have another question for you. I'm not sure that matters, but it may. It strikes me as kind of an ideal case for a bill of particulars. Defense wanted one. They didn't get one. And I can't figure out why it was opposed or why it wasn't or why a bill of particulars wasn't granted. I mean, the guy says exactly what rules did I break and he's not told. And I don't really see why not. Well, I think the district court had it on and it really informs the analysis of the claimed constructive amendment, which is the indictment uses the conduct that the defendant engaged in to describe the type of violation that occurred. And it was drawn in broad enough terms to encompass the various regulations that were ultimately incorporated into the jury instructions. And that's exactly what the Supreme Court in the Sterome case said would have been. Oh, wait a minute. I think my problem is different from the one that you're addressing. My problem is the indictment says, quote, with the intent to invade, to evade security procedures and restrictions, close quote. And I'm thinking the bill of particulars asks what security procedures and restrictions. And I don't understand why he isn't told. Well, I can't speak. I didn't try the case. I can't speak to the decision. I don't care if you tried the case or not. You're representing the government now. Of course. And I think it made sense to oppose and I think it made sense for the district court to deny it because the indictment language adequately apprised the defendant of what he was being charged with. And I think it might be some helpful context to point out that we're not talking about voluminous set of regulations. The conduct broadly described entering the terminal, carrying a bag that had not been screened and had not been approved for entry by the TSA. And that was the conduct that constituted the violation of the TSA regs. And it was the district court, I think, correctly held that identifying that conduct as the violation conduct was sufficient. This isn't a rule seven issue, by the way. I think there's some of that in the really what rule 7C is talking about is citing the statute for the regulations if you're charged under a regulation. But this is a scenario where he violates the statute. He's charged with the statute. The statute itself outlines the element, the essential element. Actually, he's not just charged with violating the statute. He's charged with violation of security requirements prescribed under the statute. Quote, in violation of security requirements prescribed under Title 49 sections and so forth. The requirements prescribed under it are in the Code of Federal Regulations. So it seems like just a normal response to a request for a bill of particulars to tell him which regs. Sure. And, you know, I just don't think it was necessary here. It was the conduct identified the violation. Certainly, at the very worst, I think, under rule 7C2, there would be no, no, nothing misleading here and no prejudice to having not had the specific regulation cited. Again, we're talking about just a couple of provisions here. It was applicable regs, on a large set of regs to look through. And I think there's just no conceivable prejudice here from having been told, look, you violated the security requirements that apply here, and this is the conduct that we believe violated those regulations. And I see that my time has expired. If nothing further, I will submit on my briefing. All right. Thank you, counsel. Mr. Bellow? You're on mute. Sorry about that. Of course, I'm on mute. It's terrible. I'll make three quick points if I may, Your Honors. One, the government now, they defend this in their brief, says the tarmac is the secured area. That's not correct. Look at 49 CFR section 1540.5. It defines the airport operations area to include the tarmac. It expressly says that doesn't include the secured area. It then defines secured area. It defines sterile area as the place where, that gives access to boarding the aircraft. The tarmac doesn't do that. When he landed at LAX, he was not in a secure or with that as they charged him with entering LAX. They didn't charge him with landing at the tarmac. That would be a further constructive amendment. And I'll agree that Judge Otero avoided the question by declaring that it was part of the sterile area. As a matter of law, 1540.5 says I am correct. Third point, if I may, my colleague, Mr. Fowler, says that the bag had not been approved by the TSA. That's inaccurate as a matter of fact. And that's why they use fraud language. They charge him with a 1036 violation of fraud case before changing it in the indictment to this. TSA approved him not screening the money. He said, I got a bag of money. I got this diplomatic card. I got this letter from Schumacher. Don't screen it. They said, okay. They approved his conduct at Midway. So that was an approved bag and they knew there was money in it because he told them and there was money in it. The last thing I'll say, if I may, is Mr. Fowler's argument is he didn't submit to law enforcement because he maintained he was not guilty. Submitting to authority is submitting to authority. When I get pulled over for speeding, which has happened, and I pull over, I'm submitting to authority, even if I don't think I was speeding. Whenever you go with law enforcement, you submit to authority. When they came on the plane, flagged their badges, said we're federal law enforcement, come with us. That is just custody. There's no reasonable inference other than that. Unless the court has questions, I will submit on the briefs and thank you for your patience today. Thank you. United States versus Flint is submitted. Judges Kleinfeld and Gold, do you wish to take five minutes before we take the next case or not? I'm fine. Up to you. Whatever you like is fine with me.
judges: Kleinfeld, Wardlaw, Gould